211 So.2d 399 (1968)
PRINGLE ASSOCIATED MORTGAGE CORPORATION
v.
Ernest R. EANES, Jr.
No. 6954.
Court of Appeal of Louisiana, First Circuit.
May 27, 1968.
Rehearing Denied July 1, 1968.
*400 Doris Gates Rankin, Baton Rouge, Samuel S. Dalton, New Orleans, for appellant.
Frank P. Simoneaux, of Breazeale, Sachse & Wilson, Baton Rouge, for appellee.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This is a hypothecary action by Pringle Associated Mortgage Corporation (Pringle) to foreclose, by ordinary process, a mortgage on real property granted by defendant mortgagor, Ernest R. Eanes. Pay, Inc. (Pay), assignee of Eanes, has taken this appeal from the default judgment of the trial court in favor of Pringle in the sum of $263,615.70, with interest and attorney's fees, and also recognizing Pringle's mortgage and ordering the sale of the mortgaged property to satisfy the obligation.
The single issue of law presented on this appeal was raised by way of an exception of no right and no cause of action filed in this court on behalf of Pay. Basically, the exception contends that the obligation was not due when foreclosure proceedings were instituted, therefore the judgment of the trial court is null and void and its invalidity should be recognized and declared by this Court. We find no merit in appellant's contention and affirm the judgment of the lower court.
Considering this matter is before us for the second time, narration of its chronological development will assist in a clearer understanding of the issue before the Court.
On March 28, 1966, Pringle instituted foreclosure proceedings via ordinaria against Eanes upon a note secured by a mortgage on certain real property situated in East Baton Rouge Parish. A preliminary default was entered against Eanes on April 15, 1966. On April 20, 1966, the default was confirmed and judgment rendered against Eanes as hereinabove indicated. Eanes' right, title and interest in and to the mortgaged property (including the right to defend the foreclosure proceeding) was acquired by Pay on May 26, 1966, pursuant to a transaction denominated a Sale and Assumption. Thereafter, on July 20, 1966, devolutive appeals from the judgment of the trial court were taken by Pay and a corporation known as Air Control Products, Inc. (Air Control). Both said appellants in substance alleged they were neither plaintiffs nor defendants in the foreclosure proceeding, but each possessed an interest in the outcome of the litigation and therefore were entitled to intervene therein. The appeal of Air Control has since been abandoned and is no longer at issue. Upon Pringle's motion, Pay's appeal was dismissed by judgment of this court rendered March 13, 1967. In dismissing Pay's appeal we found that Pay, as an intervenor, took the case as it found it. We also held the basis of Pay's exception of no right and no cause of action was in essence a plea of prematurity which should have been filed in the trial court. We also held that as intervenor, Pay had no rights on appeal other than those possessed by Eanes, and since Eanes could not have asserted a plea of prematurity on appeal, neither could Pay. See Pringle-Associated Mortgage Corporation v. Eanes, La. App., 197 So.2d 160. Upon denial of its application for rehearing by this court, Pay applied to and was granted a writ of review by the Supreme Court. Pringle-Associated Mortgage Corporation v. Eanes, 250 La. 910, 199 So.2d 919. By judgment rendered January 15, 1968, 251 La. 711, 206 *401 So.2d 81, the Supreme Court reversed the decision of this court and remanded this matter to us for disposition on the merits of Pay's exception of no right and no cause of action.
The pertinent allegations of Pringle's foreclosure petition may be summarized as follows: Pringle is the holder of a note executed by Eanes under date of July 15, 1965, in the sum of $335,000.00, bearing interest at 6% per annum from date. The note is duly paraphed by a notary public for identification with an attached mortgage securing payment of the note by hypothecating, in favor of the holder, certain real property expressly described. Pursuant to a construction loan agreement (copy of which is attached to the petition), Pringle has, from time to time, advanced Eanes sums aggregating $263,615.70 for the construction of certain apartment buildings on the mortgaged premises. According to the note, mortgage and construction loan agreement, interest on advances to Eanes during the period July 15, 1965, through June 1, 1966, is payable monthly at the rate of 6% per annum. Principal and interest due on the note for the period commencing June 1, 1966, through May 1, 1986, is allegedly payable in consecutive monthly installments of $2,401.00, the remaining balance of the principal sum being due and exigible May 1, 1986. All installments of principal bear interest at 8% per annum from due date, until paid. Finally, Pringle asserts that Eanes paid the monthly interest due through December 19, 1965, but having failed to make subsequent similar payments notwithstanding amicable demand therefor, Pringle accelerated payment of the entire indebtedness pursuant to the terms of the note and mortgage.
Upon confirmation of the preliminary default, Arthur Mitchell, Pringle's Administrative Vice President, testified that interest due on the note from July 15, 1965 to June 1, 1966, was payable monthly on the first day of each month. He further stated such payments were made only through December 19, 1965, hence the foreclosure proceeding.
The provisions of the note germane to the case are as follows:
"July 15, 1965
For value received, without grace, I, we or either of us, in solido, promise to pay to the order of PRINGLE-ASSOCIATED MORTGAGE CORPORATION the principal sum of THREE HUNDRED THIRTY-FIVE THOUSAND AND NO/100 ($335,000.00) DOLLARS, with interest thereon from the date hereof, payable monthly at the rate of six (6) per cent per annum; the principal and interest payable as follows, namely:
Beginning on the first day of June, 1966, and on the first day of each month thereafter the sum of Two Thousand, Four Hundred One and No/100 ($2,401.00) Dollars, and the balance of said principal sum due and payable on the first day of May, 1986. The aforesaid monthly payments are to be applied first to interest at the aforesaid rate per annum due monthly on the principal sum or so much as shall from time to time remain unpaid, and the balance of each monthly installment shall be applied on account of principal.
All installments of principal and all interest are payable in lawful money of the United States of America at the office of Pringle-Associated Mortgage Corporation, in New Orleans, Louisiana, or at such other place as the holder hereof may designate in writing.
All installments of principal shall bear interest after the due date until paid at the rate of eight per cent per annum. I, we or either of us, in solido, further agree to pay a sum equal to ten per cent (10%) of the amount due hereon in principal or interest or any other moneys which may become due by the maker, as attorney's fees if this note is sued upon or placed in the hands of an attorney for *402 collection, adjustment, settlement, compromise or other action.
And it is hereby agreed, in the making and delivery of this note, that if any installment of principal and interest or any part thereof shall remain unpaid at the date when such installment is due, then, at the option of the said payee or holder of this note, the whole principal and interest then accrued shall at once become due and payable, and the holder may proceed to have seized and sold the property described in the act of mortgage, given to secure the same, under the terms and in the manner provided in the said act of mortgage." (Emphasis by the Court.)
The mortgage recites that the sums advanced are to be repaid in the following manner:
"Beginning on the first day of June, 1966, and on the first day of each month thereafter the sum of Two Thousand, Four Hundred One & No/100 Dollars, and the balance of said principal sum due and payable on the first day of May, 1986. The aforesaid monthly payments are to be applied first to interest at the aforesaid rate per annum due monthly on the principal sum or so much as shall from time to time remain unpaid, and the balance of each monthly installment shall be applied on account of principal.

Bearing interest from July 15, 1965, until due at the rate of six (6) per centum per annum, payable monthly, said interest until maturity being payable on the 1st day of June, 1966 and monthly thereafter, and from maturity at the rate of eight per centum per annum, as therein provided; * * *." (Emphasis by the Court.)
Appellant's exception of no right and no cause of action, admittedly based on the concept of prematurity, is urged as a preemptory exception which may be filed on appeal in accordance with LSA-C.C.P. Article 2163 rather than a dilatory exception which must be plead in limine litis conformably with LSA-C.C.P. Articles 926 and 928.
More particularly appellant relies upon LSA-R.C.C. Article 2052 and LSA-C.C.P. Article 423. Article 2052, supra, states that what is due only at a certain time cannot be demanded previously. Article 423, supra, provides that an obligation implies a right to enforcement which may or may not immediately arise. If a term for performance is allowed, the right of enforcement does not accrue until the term has elapsed. If enforcement is subject to a suspensive condition, the enforcement privilege does not arise until the occurrence or performance of the condition. An action brought before accrual of the right of enforcement shall be dismissed as premature but may be brought again after the right has accrued.
Pay's aforesaid exceptions are founded on the contention that "the indebtedness was not due and owing at the time the petition was filed and judgment was obtained." On this premise it is argued the petition and annexed documents (which must be taken as true for purposes of disposing of the exceptions) affirmatively reflect that no interest payments were due on the note until June 1, 1966. Consequently, according to appellant, suit prior to June 1, 1966 was premature since Eanes was not required to make any payment before said date. Nor does it matter, according to counsel for appellant, that Pringle's Administrative Vice President, Arthur Mitchell, testified upon confirmation of the default that interest on the note during the period July 1, 1965 to June 1, 1966 was payable monthly on the first of each month but was actually paid only through December 19, 1965. This evidence, says counsel, is of no moment inasmuch as Foltz v. Foltz, La.App., 197 So.2d 376, is authority for the rule that on confirmation of a default judgment, the pleadings may not be considered enlarged by the introduction of additional or inconsistent testimony since *403 the defendant is not present and does not consent thereto.
Our statutory law classifies obligations as either simple or conditional. According to LSA-R.C.C. Article 2020 simple obligations are those not dependent for their execution upon any event stipulated by the contracting parties and which do not become void upon the occurrence of a stated event.
Conditional obligations are defined in LSA-R.C.C. Article 2021, which provides:
"Art. 2021. Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; if the obligation takes effect immediately, but is liable to be defeated when the event happens, it is then a resolutory condition."
Also appropos the issue at hand are LSA-R.C.C. Articles 2048 through 2051, inclusive, regulating the time of performance of limited and unlimited obligations, which said codal articles read as follows:
"Art. 2048. The time given or limited for the performance of an obligation, is called its term.
"Art. 2049. A term may not only consist of a determinate lapse of time, but also of an event, provided that event be in the course of nature, certain; if it be uncertain, it forms a condition.
"Art. 2050. When no term is fixed by the parties for the performance of the obligation, it may be executed immediately, unless, from the nature of the act, a term, either certain or uncertain, must be implied. Thus, an obligation to pay money, without any stipulation for time, may be enforced at the will of the obligee. But a promise to make a crop of sugar is necessarily deferred, until the uncertain period when the cane shall be fit to cut.
"Art. 2051. The term differs from the condition, inasmuch as it does not suspend the engagement, but only retards its execution."
The question herein posed is brought more sharply into focus by the provisions of LSA-C.C.P. Article 423, which states:
"Art. 423. An obligation implies a right to enforce it which may or may not accrue immediately upon the creation of the obligation. When the obligation allows a term for its performance, the right to enforce it does not accrue until the term has elapsed. If the obligation depends upon a suspensive condition, the right to enforce it does not accrue until the occurrence or performance of the condition.
When an action is brought on an obligation before the right to enforce it has accrued, the action shall be dismissed as premature, but it may be brought again after this right has accrued."
In elucidation of Article 423, supra, the Official Revision Comment (a) appended thereto observes that the article more clearly states the rule regarding accrual of the right of action with respect to an obligation dependent upon a suspensive condition, following which a list of authorities dealing with this particular issue are cited. We also note Official Revision Comment (b) which states:
"(b) In the case of prematurity because the term allowed for performance has not yet elapsed, the obligation comes into existence at the moment the contract is entered into, though it does not become exigible until the end of the term allowed for performance. For this reason it has been held that this type of prematurity must be raised through the exception of prematurity. Hart v. Springfield Fire & Marine Ins. Co., 136 La. 114, 66 So. 558 (1914); Williams v. Washington Nat. Ins. Co., 180 La. 423, 156 So. 453 (1934). Under this Code, this procedural objection may be raised only through the dilatory exception."
*404 The difference between that prematurity which affords the basis only of a dilatory exception and which must therefore be plead in limine litis pursuant to LSA-C.C.P. Articles 923, 926 and 928, as distinguished from the preemptory exception which may be filed at any time prior to submission of the cause to the trial court for judgment (LSA-C.C.P. Article 928) or on appeal (LSA-C.C.P. Article 2163) is set forth with clarity in Halbert v. Klauer Mfg. Co., La.App., 181 So. 75, from which we cite with approval the following:
"According to our view, the obligation of defendant in favor of Underwood and, by reason of the assignment, in favor of plaintiff herein, was a suspensive condition. It was not to take effect until the happening of an uncertain event, namely, the payment of the material account to defendant. `Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition.' Civil Code, art. 2021. And an obligation contracted on a suspensive condition depending on a future uncertain event cannot be executed or enforced until after the occurrence of the event. Civil Code, art. 2043. If execution of the conditional obligation is demanded through suit before the condition has been fulfilled, such demand is premature and the action will be dismissed leaving the obligee his right to judicially assert his claim in due time. Code of Practice, art. 158. As the evidence in the instant case is conclusive that defendant's account has never been paid, it follows that plaintiff's demand on the conditional obligation is premature.
* * * * * *
"The plea of prematurity urged by defendant is not dilatory in nature and governed by the quoted codal provision. Dilatory exceptions are such as do not tend to defeat the action, but only to retard its progress. Code of Practice, art. 332. Defendant's objection purposes to destroy or defeat the instant action because of the nonoccurrence of the event on which the suspensive condition in question hinges. The matter of retarding its progress is not involved.
"Also, numerous cases in the jurisprudence of this state are cited by counsel in fortification of their contention. Those authorities, we think, are not controlling or applicable here. The suggested doctrine was properly invoked in the cited cases because each involved what is known as a term for the performance of the obligation, and presented no suspensive condition. `The time given or limited for the performance of an obligation, is called its term.' Civil Code, art. 2048. `A term may not only consist of a determinate lapse of time, but also an event, provided that event be in the course of nature, certain; if it be uncertain, it forms a condition.' Civil Code, art. 2049. `The term differs from the condition, inasmuch as it does not suspend the engagement, but only retards its execution.' Civil Code, art. 2051. The instant case, obviously and as we have before stated, provides a condition. No term is here stipulated or present. Defendant's obligation is dependent upon the collection of its account, an event that is uncertain for it may never occur.
"It is our opinion that prematurity must be pleaded in limine litis in those cases where the obligation sought to be enforced is existent and certain, and the term stipulated for its fulfillment or discharge has not matured. If, however, the obligation depends upon the happening of an uncertain event, and objection is urged to its enforcement or execution because of the nonoccurrence of that event, the resulting issue of prematurity properly belongs to the merits of the case. We think that the controversy under consideration falls within the lastmentioned classification, and it was proper for the prematurity of plaintiff's claim to be pleaded in defendant's answer."
*405 The distinction above noted is further explained and demonstrated by the following comment appearing in McMahon's Louisiana Practice, Volume 1, Page 343, Note 65, as follows:
"Time of Filing Exception
Prematurity is a dilatory exception which must be filed in limine. Art. 333, La.Code of Practice of 1870 as amended by La.Act 124 of 1936. Williams v. Washington Nat. Ins. Co., 180 La. 423, 156 So. 453, 1934, and cases cited therein. This exception must be filed at the same time as all other dilatory ones, otherwise it will not be admitted. Art. 333, La.Code of Practice of 1870, as amended by La.Act 124 of 1936.
But in determining the function and time within which to file the exception of prematurity one thing must not be overlooked, and that is that an action may be premature for two reasons. Thus, if the obligation sued on is one presently in existence, but the right to enforce it has not accrued either because the term allowed for performance has not yet expired, or because some act must be done prior to the exercise of the right to enforce performance, the objection can only be raised through the dilatory exception of prematurity filed in limine. However, if the obligation itself does not exist because a suspensive condition on which its creation depends has not yet been performed, this objection is not waived through the failure to present it in limine, even though in one sense of the word the action may be said to be premature. On these points, see Art. 14, La.Code of Practice of 1870; Arts. 2048, 2049, 2051, La.Civil Code of 1870; Halbert v. Klauer Mfg. Co., La.App., 181 So. 75, 1938. Cf. H. B. Claflin Co. v. Feibelman, 44 La.Ann. 518, 10 So. 862, 1892."
From the foregoing it is clear that in determining the scope of and the stage of the proceedings when such an exception may be filed, the determining factor is whether the obligation is presently existent but not yet enforceable, or whether the obligation itself does not exist because of the nonfulfillment of a stated suspensive condition indispensable to its creation. Where the obligation presently exists but the right to enforcement has not accrued, either because the term for enforcement has not expired or because of the nonperformance or nonoccurrence of some act upon which enforcement is conditioned, the objection of prematurity falls within the classification of a dilatory exception which must be plead in limine litis. Where, however, the obligation does not itself arise until the fulfillment of a suspensive condition upon which its existence depends, it may not be enforced under any circumstances until the required condition is met. In this latter instance the objection of prematurity is not waived by failure to urge such objection in limine litis. Halbert v. Klauer Mfg. Co., La.App., 181 So. 75.
Pringle alleged and introduced evidence to establish that the sums advanced bore interest at the rate of six (6%) per cent payable monthly commencing with the date of the note. In this regard it relies upon the recitation in the note and mortgage that the obligation shall be repaid "with interest thereon from the date hereof, payable monthly at the rate of (6) per cent per annum; the principal and interest payable as follows, namely:" following which a schedule of monthly payments in the fixed sum of $2,401.00 is set forth, commencing June 1, 1966. The latter provision is the basis of appellant's exception.
As we understand appellant's argument it is claimed that since the note recites principal and interest is payable in monthly installments of $2,401.00 commencing June 1, 1966, the obligation did not come into existence until the first such installment matured. On this ground it is averred that the obligation itself did not arise until June 1, 1966. Appellant's argument is unsound *406 in that it is predicated upon a false assumption.
In view of the allegations of plaintiff's petition and the terms and provisions of the annexed note, mortgage and construction agreement, it is clear beyond doubt that Eanes' obligation to repay arose and came into existence immediately upon his receipt of advances from Pringle. Nothing in any of the documents even remotely suggests that the obligation intended to be assumed (repayment of the amounts loaned) would come into existence only upon the occurrence of some future event. Nor is there anything in the documents indicative of intent to suspend creation of the obligation pending the happening of any stated contingency. The agreements evince the immediate assumption of a stated obligation whose terms of enforcement are dependent upon stated eventualities. Assuming arguendo, no interest payments were due until June 1, 1966, as contended by appellant, it would avail appellant nothing. In such event plaintiff's suit would have been vulnerable only to that plea of prematurity which retards or delays the action and therefore must be filed in limine litis. LSA-C.C.P. Articles 923, 926, 928; Halbert v. Klauer Mfg. Co., supra.
Since Eanes' obligation to repay existed from the moment he executed the note and mortgage, the only question is whether the stipulated terms for enforcement were fulfilled when suit was filed. Therefore, conceding, for arguments sake, no interest was due until June 1, 1966, Eanes could only have urged that a condition precedent to enforcement had not transpired. This, of course, has no bearing upon Eanes' then present liability for the debt.
H. B. Claflin Company v. B. Feibleman & Co. et al., 44 La.Ann. 518, 10 So. 862, cited and relied upon by Pay, is not in point. In the quoted authority the endorser of a promissory note was permitted to prevail upon an exception of no cause of action grounded on prematurity. The circumstances were that the holder failed to establish demand upon the maker and notice thereof to the endorser. In sustaining the plea of prematurity, the court did so on the ground that demand and notice were conditions precedent to the endorser's liability on the note.
We also find Catlett v. Heffner & Likens, 23 La.Ann. 577, inapposite to the case at hand inasmuch as said authority involved a case wherein prematurity was expressly pleaded in the trial court.
Accordingly, appellant's exception of no cause and no right of action is rejected and dismissed and the judgment of the trial court affirmed at the cost of appellant, Pay, Inc.
Affirmed.